| | |
|---|---|
| PHYSICIAN AND TACTICAL HEALTHCARE SERVICES, LLC, | 1:20-cv-10808-NLH-KMW |
| Plaintiff, | |
| v. | **OPINION** |
| INOVA HEALTH CARE SERVICES, | |
| Defendant. | |

<u>**APPEARANCES**</u>:

JONATHAN P. RARDIN
ARCHER & GREINER PC
ONE LIBERTY PLACE, 32ND FLOOR
1650 MARKET STREET
PHILADELPHIA, PA 19103

 *On behalf of Plaintiff*

SUSAN KARLOVICH
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP
200 CAMPUS DRIVE
FLORHAM PARK, NJ 07932

 *On behalf of Defendant*

<u>**HILLMAN**</u>, District Judge

 This matter concerns claims by Plaintiff Physician and Tactical Healthcare Services, LLC ("PATHS") that Defendant Inova Health Care Services breached a contract the two entered for Plaintiff to provide certain medical billing services for Defendant. Presently before the Court is Defendant's motion to dismiss Plaintiff's claims, or in the alternative to transfer the action to the District Court for the Eastern District of

Virginia.  For the reasons expressed below, Defendant's motion
will be granted, and Plaintiff's claims will be dismissed
without prejudice.

**BACKGROUND**

Plaintiff is a business which provides account receivable
management services, qualifying eligible patients for Medicaid
coverage and providing related consulting services to healthcare
providers.  Defendant is a healthcare organization operating
hospital facilities in Virginia.  On August 23, 2018, the two
parties entered into a Services Agreement, pursuant to which
PATHS agreed to assist Inova in qualifying its patients for
Medicaid coverage for services provided to eligible patients at
five medical facilities operated by Inova for an anticipated
period of two years.  That same day, the parties also signed a
document entitled "Appendix 2 – Inova IT Terms and Conditions."

Over the following months, the parties began to perform on
the contract, with multiple issues arising that are relevant to
their underlying dispute but not relevant to the Court's
analysis in this Opinion.  Then, on June 14, 2019, an official
from Inova emailed PATHS, purporting to terminate their contract
pursuant to "section 3.a of that agreement, which allows either
party to terminate the agreement without cause after the initial
12 months, upon ninety days' prior written notice."  (ECF No. 5
at ¶ 44).  Plaintiff responded by rejecting the idea that

Defendant had properly terminated the agreement, and requesting that Defendant inform it when Inova officials would be available to meet to discuss the issue.

Defendant followed by sending a second notice of termination, this time asserting that it was doing so for cause under the Services Agreement, which permits either party to unilaterally terminate the agreement for cause so long as they provide 30 days notice. Plaintiff again responded by declaring that Defendant's termination was baseless, and further asserted that "[u]nless Inova withdraws the improper 30-day notice of termination, PATHS does not intend to meet to attempt to consult and negotiate to reach a solution pursuant to Paragraph 16 of the Service Agreement as Inova has made its intentions to evade its obligations under the service Agreement clear." (ECF No. 11-11, Ex. I).

Finally, Plaintiff filed its initial complaint in this action on August 19, 2020. (ECF No. 1). After this Court issued an Order to Show Cause regarding this Court's subject matter jurisdiction over the action, Plaintiff filed the operative Amended Complaint on August 28, 2020. (ECF No. 5). Plaintiff's complaint asserts five causes of action: three counts of breach of contract for improper termination, refusal to permit access to certain locations, and refusal to refer patients timely, as well as counts for breach of the implied

3

covenant of good faith and fair dealing and for fraud in the inducement. Defendant responded to the complaint by filing the presently pending motion to dismiss on October 1, 2020. (ECF No. 9). Plaintiff filed a brief in opposition to the motion on November 2, 2020, (ECF No. 11), and Defendant filed a brief in further support of its motion on November 16, 2020. (ECF No. 14). The motion to dismiss is therefore fully briefed and ripe for adjudication.

## DISCUSSION

### I.    Subject Matter Jurisdiction

This Court has jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332, as there is complete diversity of the parties and the amount in controversy exceeds $75,000.

### II.    Legal Standard for Motion to Dismiss under Rule 12(b)(3) and 12(b)(6)

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing Conley v. Gibson, 355 U.S. 41, 47 (1957); Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994); and then citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

To determine the sufficiency of a complaint, a court must take three steps: (1) the court must take note of the elements a plaintiff must plead to state a claim; (2) the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664, 675, 679 (2009) (alterations, quotations, and other citations omitted).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the

claimant is entitled to offer evidence to support the claim."
Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhoades, 416
U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our
decision in Twombly expounded the pleading standard for 'all
civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d
203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in
the coffin for the 'no set of facts' standard that applied to
federal complaints before Twombly."). "A motion to dismiss
should be granted if the plaintiff is unable to plead 'enough
facts to state a claim to relief that is plausible on its
face.'" Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at
570).

Similarly, in evaluating a motion to dismiss pursuant to
Rule 12(b)(3), the Court accepts the allegations in the
complaint as true, unless they are contradicted by defendants'
sworn statements. Bookman v. First Am. Mktg. Corp., 459 F.
App'x 157, 158 n.1 (3d Cir. 2012). Defendants bear the burden
of showing that venue is improper. Id. at 160.

### III. **Analysis**

While Defendant at times cites to both New Jersey and
Virginia case law, both the Services Agreement and Addendum 2
clearly provide that Virginia law governs the construction and
enforcement of the agreements. (ECF No. 5-1, Ex. A at 10, ¶ 12
and 4, ¶ 22). As a federal court sitting in diversity, the

6

Court applies New Jersey law regarding choice of law provisions. Klaxon Co. v. Stentor Elec. Mfg. Co. Inc., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In New Jersey, "effect [is given] to contracting parties' private choice of law clauses unless they conflict with New Jersey public policy." General Motors Corp. v. New A.C. Chevrolet, Inc., 263 F.3d 296, 331 n.21 (3d Cir. 2001) (citing Instructional Sys., Inc. v. Computer Curriculum Corp., 130 N.J. 324, 614 A.2d 124, 133 (N.J. 1992)). As the interpretation and enforceability of the Dispute Escalation provision clearly falls within the ambit of the choice of law provision, and the Court sees no reason why enforcement of the provision would conflict with New Jersey public policy, the Court will therefore apply Virginia law in its analysis of the pending motion.

The Defendant here has raised multiple separate arguments for why the complaint must either be dismissed or transferred: it argues that (1) the Dispute Escalation clause required the parties to mediate their claims before initiating litigation, (2) the forum selection clause required this complaint to be filed in Virginia, (3) this Court lacks personal jurisdiction over Defendant, (4) the complaint should be dismissed or transferred due to improper venue, and (5) the complaint must be dismissed for insufficient service of process. The Court will turn first to Defendant's argument focused on the Dispute

Escalation provision's mediation requirement.

The Dispute Escalation provision, Section 16 of the Services Agreement, provides a process by which the parties must first attempt to resolve any disputes that arise between them before resorting to litigation. Specifically, it states:

> 16. DISPUTE ESCALATION. In the event of any dispute, claim, question, or disagreement arising from or relating to this Agreement or the breach thereof, the parties hereto shall use their best efforts to settle the dispute, claim, question, or disagreement. To this affect they shall consult and negotiate with each other in good faith and, recognizing their mutual interests, attempt to reach a just and equitable solution satisfactory to both parties. If they do not reach such solution within a period of 60 days, then, upon notice by either party to the other, all disputes, claims, questions, or disagreements shall be subject to mediation conducted in accordance with the Local Rule of Procedure adopted by the U.S. District Court of Virginia for the Early Neutral Evaluation Mediation Program. If the dispute, claim, question, or disagreement is not resolved pursuant to such mediation procedures, each party will be entitled to seek whatever legal or equitable remedies that may be available to such party under this Agreement.

(ECF No. 5-1, Ex. A at 3, § 16).

Defendant argues that this action must be "dismissed so that PATHS can pursue its claims in mediation conducted in accordance with the Local Rule of Procedure adopted by the U.S. District Court of Virginia for the Early Neutral Evaluation Mediation Program." (ECF No. 9-2 at 15). Plaintiff, for its part, simply argues that Defendant is responsible for this failure to mediate, because it "improperly terminated the

8

Service Agreement on multiple occasions without regard to its obligations under this Paragraph or any attempt to resolve any dispute and, finally, before the mediation could occur, effectively waiving its right to termination." (ECF No. 11 at 20 n.5).

The Court first notes that Defendant's brief, despite have raised the existence of this provision as its first and central argument for why this action should be dismissed, does not specify the rule under which it moves for that dismissal and refers to it in its moving brief as a forum selection clause. While Defendant's arguments are interwoven with their points regarding a separate provision also disputed by the parties, which is more accurately described as a forum selection clause, Defendant repeatedly states its belief that the mediation requirement found in Section 16 mandates dismissal of this action. See, e.g., (ECF No. 9-2 at 14) ("By signing the Services Agreement, PATHS contractually agreed to mediate in Virginia before seeking other legal remedies . . .") and (Id. at 15) ("The parties manifested clear intent by agreeing to mediate in Virginia prior to filing suit . . .").

The parties have not briefed which rule this argument is most properly assessed under; other federal courts, faced with similar provisions governed by Virginia law, have addressed such questions as arguments that the Court lacked subject matter

jurisdiction under Rule 12(b)(1) or that the plaintiff had failed to state a claim under Rule 12(b)(6). See Tattoo Art, Inc. v. Tat Intern., LLC, 711 F. Supp. 2d 645 (E.D. Va. 2010) (granting motion to dismiss for lack of subject matter jurisdiction due to plaintiff's failure to engage in mediation prior to commencing litigation); American Technology Services, Inc. v. Universal Travel Plan, Inc., No. Civ.A.1:05CV802(JCC), 2005 WL 2218437 (E.D. Va. Aug. 8, 2005) (granting motion to dismiss under Rule 12(b)(6) for failure to state a claim due to plaintiff's failure to engage in mediation prior to commencing litigation). Here, the Court will defer to Defendant's framing that this basis for dismissal is directly related to its argument that the complaint must be dismissed due to the existence of a forum-selection cause, which other courts in this district have recently addressed under Rule 12(b)(6). See, e.g., Zydus Worldwide DMCC v. Teva API Inc., 461 F. Supp. 3d 119 (D.N.J. 2020). However, the Court notes that the specific mechanism under which this argument is analyzed has no substantive impact on the motion at hand, for the simple reason that the facts and evidence that both parties rely upon in arguing whether this provision applies or impacts the present case are all directly referenced in and attached to the Amended Complaint. Accordingly, the Court will proceed to assess the parties' full arguments regarding the import and application of

the Dispute Escalation provision.

The initial question before the Court then is whether the Dispute Escalation provision required the parties to attempt mediation of Plaintiff's claims before the filing of this lawsuit, and whether, if the provision did, Plaintiff's claims must therefore be dismissed. "A contract's condition precedent to initiating legal action is enforceable in Virginia." Primov v. Serco, Inc., 296 Va. 59, 66, 817 S.E.2d 811, 814 (2018) (citing TC MidAtlantic Dev., Inc. v. Commonwealth, 280 Va. 204, 210, 695 S.E.2d 543, 547 (2010)). And Virginia law specifically enforces conditions precedent like the one here, which require parties to engage in some form of mediation prior to initiating legal action.

In Primov v. Serco, for example, the Virginia Supreme Court upheld a lower court's decision to dismiss a complaint with prejudice due to the plaintiff's failure to abide by the contract's mediation requirement. There, the parties' contract provided that "The parties shall attempt in good faith to resolve any dispute arising out of or relating to this Agreement promptly by confidential mediation. If the dispute has not been resolved by mediation within 60 days of a written request to mediate made by one of the parties, then either party may bring suit . . ." Id. at 64. The lower court found that "[t]he plain language of the mandatory mediation provision in the Assignment

11

Letter clearly states the parties must attempt mediation outside of court at the written request of the aggrieved party at least 60 days prior to initiating litigation," and accordingly held that "[t]he appropriate remedy when a party fails to satisfy a condition precedent triggering the right to litigation is dismissal." Primov v. Serco, No. CL-2016-17124, 2017 WL 9887365, at *6-7 (Va. Cir. Ct. July 19, 2017).

In a similarly straightforward case, Pruett v. U.S. Bank Nat. Ass'n, No. 1:12CV00006, 2012 WL 5465554 (W.D. Va. May 4, 2012), the court was faced with a contract providing that "[i]n an effort to avoid the expense and delay of litigation, the parties agree to submit any disputes or claims arising out of this Contract, including those involving the Listing Company or the Selling Company, to mediation prior to instituting litigation." Id. at *1. That court easily found that the failure to mediate warranted dismissal: "The language in the Agreement requiring nonbinding mediation prior to instituting litigation is clear and there is no doubt that by the terms of the Agreement, [Plaintiff] was required to submit his claims to mediation before filing an action in court. Because the Complaint contains no allegation of performance of this requirement, its dismissal is appropriate." Id.

And these are far from the only cases applying Virginia law to reach this conclusion. In fact, Virginia's state and federal

courts have been consistent in enforcing contractual provisions requiring that parties mediate their claims before filing lawsuits.  See, e.g., Galloway v. Priority Imports Richmond, LLC, No. 3:19-cv-209, 2019 WL 4307874, at *1, 3 (E.D. Va. Sept. 11, 2019) (enforcing provision requiring that "the Parties will first attempt to resolve the Dispute through nonbinding mediation conducted by a neutral third party prior to instituting any other legal action"); Bates v. Purdon, No.: CL18-4589, 2019 WL 5965230, at *7 (Va. Cir. Ct. Jan. 25, 2019) ("The Mediation Provision requires that the parties mediate disputes before instituting litigation. Because the parties have not yet participated in mediation and the [Defendants] have not waived their right to mediate, the Court . . . dismisses the Complaint without prejudice."); Dominion Transmission, Inc. v. Precision Pipeline, Inc., No. 3:13-cv-442-JAG, 2013 WL 5962939, at *1 (E.D. Va. Nov. 6, 2013) ("[T]he Court finds that the plaintiff did not abide by its contractual obligation to submit the dispute to formal mediation, and that accordingly, this matter should not yet be before this Court. The Court therefore GRANTS the defendant's Motion to Dismiss, and DISMISSES the plaintiff's complaint WITHOUT PREJUDICE."); Tattoo Art, Inc., 711 F. Supp. 2d at 649-50, 652 (holding that "Plaintiff failed to satisfy the condition precedent necessary to trigger the right to initiate litigation" because the parties did not

attempt mediation despite contractual providing stating that "[i]n the event of any dispute arising from this Agreement, the parties agree to submit the dispute to mediation in Virginia Beach, Virginia, prior to filing any action to enforce this Agreement.").

It therefore appears clear that the Dispute Escalation clause's unequivocal statement that "all disputes, claims, questions, or disagreements *shall* be subject to mediation conducted in accordance with the Local Rule of Procedure adopted by the U.S. District Court of Virginia for the Early Neutral Evaluation Mediation Program," and that the parties may only resort to other legal remedies if their claim "is not resolved pursuant to such mediation procedures," is enforceable under Virginia law. Accordingly, Plaintiff was not permitted to file this lawsuit until the parties had attempted to mediate their claims. Plaintiff does not dispute that no such mediation occurred here.

Instead, Plaintiff appears to put forward only one argument as to why the mediation requirement is not enforceable in this action: "Mediation in this matter did not occur because Inova improperly terminated the Service Agreement on multiple occasions without regard to its obligations . . . or any attempt to resolve any dispute and, finally, before the mediation could occur, effectively waiving its right to termination." (ECF No.

11 at 20 n.5).  Plaintiff cites no case law to support this argument, and this contention appears nowhere else in the argument section of its brief besides the footnote quoted above.

However, waiver of a condition precedent like the Dispute Escalation provision's mediation requirement is a valid argument, and the Court will address whether it excuses the failure to mediate here.  "Waiver is an intentional relinquishment of a known right" that consists of two elements: (1) "knowledge of the facts basic to the exercise of the right" and (2) "the intent to relinquish that right."  Va. Polytechnic Inst. & State Univ. v. Interactive Return Serv., 267 Va. 642, 652, 595 S.E.2d 1, 6 (2004).  "The party relying on a waiver has the burden to prove the essentials of such waiver ... by clear, precise and unequivocal evidence."  Id.

Plaintiff's waiver argument is focused on the chain of communications surrounding Defendant's attempt to terminate the agreement.  As described above, Defendant initially informed Plaintiff of its intent to terminate the agreement in June 2019. After Plaintiff responded by referencing the Dispute Escalation provision and requesting Defendant inform it when Inova personnel would be available to meet with PATHS personnel to attempt to resolve the issue, Defendant then sent a second letter, purporting to terminate the agreement for cause; this termination is the basis for Count I of Plaintiff's complaint

for breach of contract via improper termination.  In response, Plaintiff sent its own second letter, declaring that "[u]nless Inova withdraws the improper 30-day notice of termination, PATHS does not intend to meet to attempt to consult and negotiate to reach a solution pursuant to Paragraph 16 of the Service Agreement as Inova has made its intentions to evade its obligations under the service Agreement clear."  (ECF No. 5-1, Ex. 8).

At its core, Plaintiff's argument is that the Dispute Escalation clause required the parties to first meet and discuss, and then mediate, "any dispute, claim, question, or disagreement," and that since Defendant did not do so prior to declaring that it was terminating the agreement for cause, Defendant waived its right to later demand mediation prior to Plaintiff filing this lawsuit.

However, Plaintiff's argument runs into an issue that its briefing entirely ignores: this reading of the provision's requirement runs into conflict with the exact Termination clause underlying Count I of their complaint.  The Termination clause of the Services Agreement, found in § 3, is clear: "This Agreement may be terminated by either party with cause, upon thirty (30) days prior written notice and without cause after the initial 12 months, upon ninety (90) days prior written notice."  (ECF No. 5-1, Ex. A at 3, ¶ 3).  The Services

Agreement therefore affords both parties the right to unilaterally terminate the contract, pursuant to certain notice requirements and the requirement that they wait until 12 months have passed if terminating without cause. Plaintiff here, and in their second responsive letter sent to Defendant, essentially asserts that Defendant's declaration that they were exercising this unilateral right to terminate for cause itself constituted waiver of the mediation requirement.

But such a reading would swallow the language of the Termination provision and, at least to some extent, negate the parties' right to terminate for cause upon only 30 days notice; the parties here agreed upon this specific termination provision, presumably believing that there was some benefit gained from being able to exit their contractual agreement in that time frame if they had cause to do so. Under Virginia law, "[w]hen two provisions of a contract seemingly conflict, if, without discarding either, they can be harmonized so as to effectuate the intention of the parties as expressed in the contract considered as a whole, this should be done." Plunkett v. Plunkett, 271 Va. 162, 168, 624 S.E.2d 39, 42 (2006) (quoting Ames v. American Nat'l Bank of Portsmouth, 163 Va. 1, 39, 176 S.E. 204, 217 (1934)). Here, such harmonization is simple: the Court finds that the Dispute Escalation clause did not require mediation prior to Defendant's decision to exercise its

unilateral termination right.

Defendant's counterargument regarding waiver intersects
with this idea.  Defendant frames the chain of events here
slightly differently: it contends that "[i]t was Inova's notice
of termination, and Plaintiff's objection to such notice, that
created the dispute requiring mediation."  (ECF No. 14 at 9).
The Court agrees.  The dispute in question here is whether
Defendant properly terminated the agreement; Defendant purported
to assert its right to terminate the contract, first without
cause and then for cause, and Plaintiff objected and argued that
its termination was improper.  At that stage, the Dispute
Escalation provision's mediation requirement became relevant,
and required mediation before Plaintiff could sue for breach of
contract based on that improper termination.  Rather than doing
so, Plaintiff straightforwardly and unequivocally declared it
would not comply with the Dispute Escalation provision's
requirements unless Defendant revoke its purported termination:
"Unless Inova withdraws the improper 30-day notice of
termination, PATHS does not intend to meet to attempt to consult
and negotiate to reach a solution pursuant to Paragraph 16 of
the Service Agreement . . ."  (ECF No. 5-1, Ex. 8).  These
facts, conceded by Plaintiff, not only demonstrate that
Defendant did not waive the mediation requirement, but in fact
make clear that fault for the failure to mediate the dispute

before resorting to legal action lays at Plaintiff's own feet.

This finding is consistent with the results of similar cases under Virginia law.  In <u>Tattoo Art</u>, for example, the relevant contract similarly required that the parties submit any contractual disputes to mediation before instituting litigation. 711 F. Supp. 2d at 649-50.  The plaintiff there sent a letter terminating the contract based on the defendant's failure to report sales and pay royalties, and its unauthorized alteration of the plaintiff's copyrighted work.  <u>Id</u>. at 652.  After defendant did not cease its activity, plaintiff suggested mediation; the mediation suggestion was rebuffed, and plaintiff ultimately filed suit.  <u>Id</u>.  The Court there, faced even with a previous suggestion from the plaintiff that the parties should mediate, found that waiver had not occurred because the plaintiff had not met the high bar of demonstrating the defendant "knowingly and intentionally relinquish[ed] their express right[]" to mediation.  <u>Id</u>. at 652-53.  Similarly, in <u>Bates</u>, the plaintiff had actively demanded the parties mediate a dispute that arose after the defendant allegedly breached their contract.  2019 WL 5965230 at 5.  The defendant there completely ignored the mediation request letters, and the plaintiff decided to file suit.  <u>Id</u>. at 6.  But even in that case, the Virginia court held that it had "been presented nothing evidencing that the [Defendants] knowingly and intentionally relinquished their

right to mediate under the Agreement," and dismissed the complaint without prejudice.  <u>Id</u>. at 7.

Plaintiff here has not put forth "clear, precise and unequivocal evidence" that Defendant knowingly and intentionally waived its right to mediate this dispute under the Dispute Escalation provision, and therefore has failed to meet the "high standard required for establishing waiver".  <u>Dominion Transmission</u>, 2013 WL 5962939 at *6.  To the contrary, Plaintiff's own factual allegations and evidence demonstrate that it was Plaintiff itself that almost immediately declared that it had no intention of abiding by the mediation requirement, and it was obviously Plaintiff who then proceeded to initiate this action.  Accordingly, the Court finds that Defendant has not waived the mediation requirement, and that Plaintiff violated the Dispute Escalation provision of the Services Agreement when it filed this lawsuit without the parties having yet attempted to mediate their dispute regarding Defendant's termination of the Services Agreement.

The Court will therefore grant Defendant's motion to dismiss the complaint without prejudice, so that the parties may mediate their dispute.  As this decision is dispositive, the Court makes no findings regarding the proper forum for any potential future litigation, and further does not reach Defendant's arguments regarding personal jurisdiction or

insufficient service of process.  However, the Court recognizes that the parties further dispute whether their contractual agreement would require that mediation take place in Virginia. As the Court is dismissing this action to allow for mediation, it will further address this related, narrow question.

Defendant's main argument in favor of a requirement that mediation take place in Virginia is based on the Dispute Escalation provision's requirement that mediation shall be "conducted in accordance with the Local Rule of Procedure adopted by the U.S. District Court of Virginia for the Early Neutral Evaluation Mediation Program."  Defendant points the Court to the Eastern District of Virginia's Local Rule 83.6, which governs such mediations in that district, and notes that it advises that mediation by a district judge or magistrate judge is available to litigants in all civil cases.  The rule does have such a provision.  (ECF No. 14-3, Ex. 12 at Rule 83.6(C)) ("All district judges, magistrate judges, and bankruptcy judges are authorized to act as mediators or neutrals.").  According to Defendant, the rule "contemplates that the mediator would be a United States district judge or magistrate judge who are all trained and authorized to act as mediators or 'neutrals.' It follows then that the mediation would therefore be conducted in the forum agreed to by the parties, the United States District Court, Eastern District of

Virginia where the judge or magistrate sits." (ECF No. 14 at 9).

Contrary to Defendant's implication, however, the rule explicitly and unequivocally does not require mediation to be conducted by a district or magistrate judge. The subsection of the rule immediately prior to the subsection cited by Defendant states that "The parties by consent may select and compensate any mutually acceptable non-judicial mediator or neutral." (ECF No. 14-3, Ex. 12 at Rule 83.6(B)). Accordingly, by Rule 83.6's own terms, it does not require that a mediation be conducted in any specific forum, or by any specific mediator. Nor does the simple fact that the Dispute Escalation clause mandates that mediation shall be "conducted in accordance with the Local Rule of Procedure adopted by the U.S. District Court of Virginia for the Early Neutral Evaluation Mediation Program" mean that mediation must take place in Virginia or in that District. As Plaintiff correctly explains, the Dispute Escalation clause "merely dictates the procedural rules applicable to a mediation," rather than dictating exactly where it must occur.

And while the Court makes no finding regarding whether the forum selection clause found in Appendix 2 applies to the claims brought here, it does find that, even were it to apply, it would not require a specific forum for the parties' mediation. The clause in Appendix 2 provides that "any *action* to enforce or to

construe any provision of the Agreement may be brought only in the Commonwealth of Virginia, notwithstanding the appropriateness of the jurisdiction [of] the courts of any other state."  (ECF No. 5-1, Ex. A at 10, § 12).  The term "action," when used in the legal context and in both Virginia's code for civil procedure and its version of the Uniform Commercial Code, generally refers to judicial proceedings in court.  See, e.g., Black's Law Dictionary (11th Ed. 2019) (Defining "action" as "a civil or criminal judicial proceeding"); VA Code Ann. § 8.01-2(1) (Virginia's Civil Remedies and Procedure Code stating that "'Action' and 'suit' may be used interchangeably and shall include all civil proceedings whether upon claims at law, in equity, or statutory in nature and whether in circuit courts or district courts."); VA ST § 8.1A-201 (Virginia's version of the Uniform Commercial Code defining "Action" by describing it as "in the sense of a judicial proceeding"); "Action." Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/action (accessed May 16, 2021) (defining "action" as "the initiating of a proceeding in a court of justice by which one demands or enforces one's right . . . [or] the proceeding itself").

Alternatively, Title 8.01 of the Virginia Annotated Code, which covers Civil Remedies and Procedures, includes a Chapter 21.2 governing "Mediation."  That chapter defines mediation as

"a process in which a mediator facilitates communication between the parties and, without deciding the issues or imposing a solution on the parties, enables them to understand and to reach a mutually agreeable resolution to their dispute" — a definition which in no way overlaps with the same Title's definition of "action." VA Code Ann. § 8.01-581.21. Accordingly, both general definitions and Virginia statutory law appear to distinguish between actions, which are "civil" or "judicial" proceedings in court, and mediations such as that required by the Dispute Escalation provision.

This reading of the term as used in the contract here is only further strengthened by the Dispute Escalation provision's explanation that Virginia is required as the forum for actions to construe or enforce the Services Agreement "notwithstanding the appropriateness of the jurisdiction [of] *the courts* of any other state," which again implies that the provision itself applies to actions brought in court, not a mediation attempting to resolve the dispute before instituting a civil lawsuit. The Court finds that this provision, by its clear language, governs the proper forum for actions brought in court; it does not sweep so broadly as to require a specific forum for pre-litigation mediation between the parties. Accordingly, while the parties must mediate their claims before resorting to civil litigation, and that mediation must be conducted in accordance with the

Local Rule of Procedure adopted by the U.S. District Court of Virginia for the Early Neutral Evaluation Mediation Program, no specific forum or neutral mediator is required.

**CONCLUSION**

For the reasons expressed above, Defendant's motion to dismiss (ECF No. 9) will be granted, and Plaintiff's claims will be dismissed without prejudice so as to allow the parties to engage in mediation of their dispute.

An appropriate Order will be entered.


Date: __May 19, 2021__          ____/s Noel L. Hillman____
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.